Thurman, J.
I fully concur with the majority of the court in regarding as constitutional the eighteenth section of the act for the organization of the courts (50 Ohio L. 71), and the act of April 30,. 1852, idem 102, by which it was repealed and re-enacted with amendments. It is objected to these statutes that they are attempts to revive and amend the practice acts that were applicable only to the courts under the old constitution, and that, therefore, they conflict with art. 2, sec. 16 of the new constitution, which provides, thatt! no law shall be revived or amended, unless the new act contain the entire act revived, or the section or sections amended; and the section or sections so amended shall be repealed.”
As I have said, in Hubble v. Renick, ante, 176, I am strongly inclined to the opinion that the practice acts and various others, providing remedies and regulating judicial proceedings, in force when the present constitution took effect; are saved by it, and would, without the statutes in question, govern the existing courts in the exercise of their proper jurisdiction. It is true, the present courts are creations of the new constitution, and are, therefore, by whatever names called, distinct from the former courts. Laws, *293 then, relating to the old courts would seem to have no application to the new, unless made to apply by the constitution or by legislation. Of course, some of the laws relative to the judiciary expired with the old system, being in their nature wholly inapplicable to the new courts. But the great body of the statutes, which might •be applied to the present courts without contravening the constitution, was so applied, as I think, by that instrument itself; not in ■express words, but by necessary ^implication. The constitution took effect September 1,1851; but, under its provisions, the old judiciary remained in power until the second Monday of February, 1852. Up to this time, therefore, the practice acts, etc., were clearly in force. Many suits and matters, however, were then pending and undisposed of. This had been foreseen, and provisions in the constitution directed them to be transferred to the new courts and proceeded in to final judgment. How could this be done if the laws under which they originated, and pursuant to which they had been conducted up to February 9,1852, then expired, and the legislature had no power to pass the eighteenth section aforesaid? It was surely never contemplated that a new statute book would be made between the first Monday of January, when the legislature was to meet, and the second Monday of February, when the new .'Courts would come into power. Nor could it have been intended that parties to such litigation should be compelled to await legislation. Was it designed, for instance, that a plaintiff in attachment, whose suit was brought before February 9, should be unable to proceed a single step until a new attachment law should be enacted, and that no new writ should be issued before the passage of such an ■act ? And that all proceedings under the water-craft law, and in ■dower, partition, replevin, and the other statutory remedies, should ■be suspended, and no other suits brought until the general assembly should enact laws in detail upon these subjects ? Were the probate of wills, the granting of letters testamentary and of administration, the appointment of guardians, inquisitions of lunacy, and condemnations of property for the public use, all to await legislation ? Was no justice of the peace, elected under the new constitution, to have any power until an act defining his jurisdiction, and prescribing the mode of its exercise should be passed ? I see nothing in either the tenor or spirit of the instrument that requires such a decision. On the contrary, both seem to me to be opposed to it. In respect to suits pending in the court in bank, it is provided that *294 they shall be transferred to the *new supreme court, “ and be proceeded in according to law.” It is not said, according to such laws as may hereafter be enacted; but simply “ according to law” —that is according to, the law for the time being, no matter when enacted. Schedule, sec. 11.
As to the causes to be transferred from the supreme court to the district courts, it is expressly provided that they shall “be pro- • ceeded in as though no change had been made in said supreme court.” Schedule, sec. 12.
Had no such change been made, it will not be denied that the statutes in question, enacted under the former constitution, would have governed the practice of the court and the rights of the parties. They would have applied to the court by its very name. If so, they, in like manner, govern the districts courts, though newly created and bearing a different name. In regard to the cases transferred from the old to the new courts of common pleas, it is provided that they shall be proceeded in as though they had been instituted in the latter courts. Schedule, sec. 13. This imports that if they had been so instituted, the proceedings would have been the same that had already taken place; or, in other words, that the law of the two courts is the same, and is to so continue until the legislature otherwise provide. The probate courts are to proceed in the business transferred to them “ according to law.” Schedule,, sec. 14. I have already remarked upon the meaning of this expression. No provision is madefor a transfer of business to justices of the peace; because the old justices are to continue in office until their terms expire, respectively (Schedule, sec. 7), and the law provides what may be done when a justice goes out of office leaving unfinished business. The omission was evidently designed and tends strongly to show the understanding of the framers of the constitution, that the then existing laws would continue in force and govern the new courts so far as might be consistent with that instrument.
But it may be said that, although this may be the case so far as respects suits, or other business, transferred from the ^former courts, yet those laws are defunct for every other purpose; and that, therefore, no new suits can be brought under, or be regulated by them. Where, I would ask, is the necessity for any such limited construction? The objection to applying them to the present courts is, that the only courts named in them have ceased to exist. *295 But if this objection is valid at all, it extends to all cases, as well those transferred from the old courts as those originating in the new. And if it will not prevail as to the former, why should it as-to the latter? If those laws govern the existing courts, though not named in them, when acting upon one class of cases, why will they not do so in all eases? So far as they have been repealed by the legislature, without a saving clause, they may have no force in any case; but so far as they remain, why shall they not govern new, as well as old suits? Is it reasonable to suppose that the constiution is so defective as to preclude all statutory remedies until the enactment of new statutes; that it was designed that no statutory action should be brought, or will be proved, or letters testamentary granted, or administrator or guardian appointed, or inquisition of lunacy had, or property condemned for public use, or recognizance'taken, or indictment found, until the legislature should-pass laws iqpon these subjects? In short, were the framers of the constitution in drafting, and the people in adopting it, so blind as-to wipe out much the greater part of the statute book, when every dictate of reason prohibited their doing so ? I think not. It is not done expressly, or by implication, nor do I discover, any casus omissus.
I have pui’posely avoided mooting a question of no small difficulty, namely, whether the constitution does not effect something more than to transfer to the .district court the unfinished business of the old supreme court in the counties, and to the new coirrts of common pleas, and the probate courts, the undisposed of cases of the former common pleas. Possibly, when the question arises, it will be found that there is a transfer of jurisdiction, not limited to the cases transferred; and that these new courts, until otherwise provided by *law, took the entire jurisdiction of the old courts, so far as such jurisdiction would not conflict with the provisions of art. 4th of the constitution. It may be that both the language of the schedule and reason require the construction; and if so, there can be no doubt that the old statutes in question remain in force, so-far as they have not been altered or repealed by the legislature. But it is unnecessary now to decide this question. It is, undeniably, a very doubtful one, and ought not to be decided without full argument. Let it be granted, for present purposes, that no such extended jurisdiction is conferred by the constitution, and the case before us is not affected by the admission. For the courts now *296 possess jurisdictions, in virtue of the constitution and the laws enacted under it, in the exei-cise of which they should be governed by former laws, to the extent I have endeavored to indicate. If the views 1 have expressed are correct, this necessarily results, whatever part of their jurisdiction is derived directly from the constitution, and whatever portion is conferred by the law.
It seems to me, thereforej that the eighteenth section of the act organizing the courts, and the first section of the act of April 30, 1852, are unnecessary; that the object intended by them is accomplished by the constitution itself, and that they were probably enacted merely out of abundant caution.
Be this, however, as it may, I am satisfied of their constitutionality. .The clause of the constitution quoted against them provides that “ no law shall be revived or amended, unless the new act contain the entire act revived, or the section or sections amended; and the section or sections, so amended, shall be repealed.”
But, first, they revive no law; for none of the laws to which they refer had either been repealed or become obsolete. I think it can not be gainsaid that the old laws remain in force at least so far as •the cases transferred from the old courts are concerned, except where they have been altered or repealed by the legislature. I am not aware that any body denies this. I think, as I have stated, that, subject to this *exeeption, they are in force for all purposes; but if I am wrong, and they apply only to the transferred cases, that is sufficient to show that they are yet in force. And if they are in force for any purpose, or to any extent, they have not been repealed nor are they obsolete. It follows that the constitutional provision in regard to reviving laws has no application. It is said, however, that the eighteenth section and act of’April 30, aforesaid, are attempts to amend them, by subjecting the present courts to their provisions; whereas, íd their original state, they related to the old courts alone. But, technically speaking, they are not amended. We would not say that the common law is altered by the creation of a court of common law jurisdiction. We would not call it an amendment of the act organizing the courts, if a new court should be erected in a county with the same powers as the common pleas. These are not what, in legislative parlance, are called amendments, nor do I think them within the. meaning of the above clause in the constitution. That clause does not refer, I imagine, to an act defining the general jurisdiction of a court. *297 .If it does, and if the old laws were not saved by the constitution itself, it follows, as I have before said, that more than half the .statute book was wiped out: and the duty of re-creating it in five weeks, imposed upon the legislature. No such impossibility could have been intended. And it also follows that if the general assembly create a new court, it must enact in detail all the laws that prescribe its jurisdiction and mode of procedure. If it is to be governed by the code, the code must be repealed and re-enacted with amendments to include the new court. If it is to have juris.diction under the water-craft law, and in attachment, replevin, ■dower, partition, and the like, the various statutes on these subjects must, in like manner, be repealed and amended. Surely, no such thing as this could have been designed. And the language of the clause is not so stringent as to require it.
Butwhile I agree with the majority of the court upon this point, and am not aware that in anything I have thus far said, *1 •differ from them, I am yet unable to concur in their decision. For, in my judgment, it is inconsistent with the legislation of the present general assembly to hold that a writ of error is, in any case, a writ of course. I think that, in every case, it must be allowed; otherwise it can not be issued.
By the third section of the act of 1831 (Swan’s Stat. 222), power was given to the supreme court to issue writs of error “ on good ■cause shown.” It was in virtue of the power thus given that all .■such writs, whether in civil or criminal cases, were issued by that court; and, as good cause was required to be shown, it was obviously necessary, and was so uniformly held, that there must be an allowance. But, in 1845, the right, theretofore existing, to appeal an action at law to the supreme court, and thereby have a second trial of an issue of fact, was taken away; and, in lieu of it, the writ of error in civil causes was made a matter of course. (43 Ohio L. 80.) So stood the law when the present constitution took effect, and if, ■under its provisions contained in the schedule, the district courts took the same jurisdiction, until otherwise provided by law, that the old supreme court in the counties had possessed, so far as such jurisdiction was consistent with the fourth article of the constitution, it follows that a writ of error is yet a thing of course, unless .subsequent legislation has taken away the right and required it to be allowed. I think it demonstrable that it has been so taken .away, if it ever existed under the present constitution, not by the *298 express words of any act, but by necessary implication. If, on the-other hand, the district courts had no appellate jurisdiction until it was conferred upon them by law, it results that, as a writ of error is a mode of appeal, it can only be issued pursuant to some statute of the present general assembly; and if no such statute makes it. a matter of course, it must be allowed. This is not denied, and therefore the act of April 30, 1852, is relied upon, as giving the-writ without an allowance. The first section of that act provides: “ That all process and remedies authorized by the laws of this, state, when the present constitution took effect, may be had and resorted to in the courts of the proper jurisdiction under the present, constitution; and all the laws *regulating the practice of, and imposing duties on or granting powers to the supreme court, or any judge thereof, and the courts of common pleas, or any judge thereof, respectively, under the former constitution, except as to matters of probate jurisdiction, in force when the present constitution took effect, shall govern the practice of and impose-like duties upon the districts courts and courts of common pleasj and the judges thereof, respectively, created by the present constitution, so far as such process, remedies, and laws shall be applicable to said courts respectively, and to the judges thereof, and not inconsistent with the laws passed since the present constitution took effect.”
It is evident that this statute is amply sufficient to authorize a writ of error in a civil cause, as a matter of course, unless its being1 so issued is inconsistent with some law or laws previously enacted, under the present constitution. If there is such inconsistency, then, by the express words of the statute, the remedy is withheld. I maintain that it is inconsistent, first, with the act for the organization of the courts, passed February 19, 1852, and, secondly, with the acts regulating appeals to the district courts, passed March 23r 1852. By the 13th section of the former act, the general appellate jurisdiction of the district courts is conferred; and among the powers given is the “power, on good cause shown, to issue writs of error.” If this is the only grant of power to issue the writ, it is conceded that it requires an allowance, for the language is the same as that of the act of 1831, under which an allowance was always deemed necessary. But the eighteenth section of the act is very similar to-the section above quoted from the act of April 30. The only differences are, first, that the latter section supplies certain supposed deficiencies of the former, by granting to single judges certain- *299 powers, that were thought not to have been conferred by the former;, and, secondly, it expressly limits the powers and remedies granted, by providing that they must not be inconsistent with previous legislation under the present constitution. As, then, the eighteenth section, if it stood alone, would give a writ of error in a civil case, without an allowance, it is contended that the power to issue writs, upon good cause shown, conferred by the thirteenth section, was meant for criminal cases only. I can not think so. The thirteenth section was designed, it seems to me, to provide appellate jurisdiction, and the eighteenth section, to regulate its exercise. I do not say that this is all that the latter effected, but it appears to -me to have been its main object; and I would therefore construe it as limited by the thirteenth, where they conflict. It is a well settled rule of construction, that general words in a statute will be restricted where special provisions in the same act seem to require it. Jurisdiction in all cases in error was meant to be conferred by the thirteenth section ; and its language should, therefore, govern and limit the general terms of the eighteenth. If so, eveiy writ of error required an allowance under the act organizing the courts.
Let us now turn to the acts regulating appeals. If a party would appeal under it, he must, at the judgment term, enter notice of his intention upon the record of the court; and, -within thirty days from the term, give bond with one or more sufficient sureties. The penalty of the bond must be double the amount of the judgment where that is for the payment of money only; but may be in a much greater sum if the judgment is for nominal damages and costs, or for costs only; for, in the latter cases, the court fixes the penalty. If the judgment was for the payment of money only, and the appellate court render substantially the same judgment, and is-satisfied that the appeal was vexatious, and for the purpose of delay merely, a penalty of ten per cent, upon the amount of the judgment below shall be adjudged against the appellant; but if the judgment-below was for nominal damages and costs, or for costs only, and substantially the same judgment is rendered in the appellate court and the court shall not be satisfied that there was reasonable and probable ground for the appeal, “ there shall be adjudged to the appellee, or party affected by the appeal, damages in such specific sum as may be deemed reasonable, not exceeding two hundred dollars.”
*Such are the provisions of the statute, wisely designed to guard the rights of the parties, to discourage useless litigation, and *300 to protect creditors and courts against frivolous and vexatious appeals.
But these are plainly idle provisions, in a multitude of eases, if a party can have a writ of error as a matter of course. No man, ■seeking delay merely, will put himself to the trouble of entering notice of appeal and giving bond within thirty days, if, at any time within five years, when menaced with an execution, he can supersede it by a writ of error, issued upon his own ipse dixit. No such man, against whom nominal damages and costs, or costs only, have been adjudged, will give a bond in a penalty fixed by the court, when a writ of error bond in double-the amount of the judgment may suffice; nor will he run the risk of paying two hundred dollars damages upon a vexatious appeal, when but five per cent, penalty can be awarded upon a writ of eiTor. Nor will any judgment debtor, merely seeking delay, appeal his cause and pay ten per cent, damages when he can take it up on error and pay but five. Now, ought we to believe that, after providing so carefully, by their act of March 23, against frivolous appeals and vexatious litigation, the legislature turned about on April 30th, and substantially undid all their work ? And this, too, when no possible reason for undoing it could have existed? It has never been our policy to allow •an appeal and a writ of error of course. It was only when the former was taken away in 1845 that the latter was given. The former has -been restored, and there was no longer any necessity for the latter. I can not think that the legislature meant to give both, and I find nothing'in the statute relied on that requires us to defeat their intent. On the contrary, believing that the writ, unless allowed, is inconsistent with the terms of the act organizing the courts, and manifestly derogatory to the spirit and intent of the act regulating appeals, I hold it to be clearly negatived by the act ■of April 30. I must, therefore, with great respect for the better judgment of the majority of the court, dissent from their decision.

Judgment of district court affirmed.